May it please the Court, Counsel, Your Honors, my name is Tom Cogley. I represent the appellant in this matter, Mr. Elmer Zahn. We're asking the Court to reverse the decision of the courts below denying our motion to suppress and to remand the case for further proceedings. Now there are several things in this case that are not in dispute, Your Honors. The first one is that it's undisputed that Elmer Zahn was arrested in November of 2019 based on a warrant that was no longer active, that had been recalled within the system. It's also undisputed that no individual from the Sheriff's Department ever removed the physical copy of that warrant from the warrant tray. The practice in Brown County as far as how warrants are issued and then dealt with was fleshed out at the evidentiary hearing. What happens is that when a warrant is issued, someone from the clerk's office contacts the Sheriff's Department and takes the physical copy of that warrant down to the Sheriff's Department. It gets placed in the tray with other unserved warrants. When a warrant is recalled before it's served, someone from the clerk's office again contacts the Sheriff's office and says, hey, could you please bring that warrant back up here, the physical copy of that warrant back up here. And that's what happened here in terms of what the clerk's responsibility was. In fact, I believe the evidence was that the email was actually sent to two separate deputies advising them that Mr. Zahn's case had concluded and that there was no longer any need for the warrant, so please bring it back upstairs. The other thing that was undisputed at the hearing is that there's no, no one in the Sheriff's Department has the responsibility for going through that warrant tray or the computer system to determine if any of those physical copies of the warrants are still valid or if they've been recalled. There's no policy in place. There's no procedure in place. There's nobody who checks the status of that once a week or even once a month to determine if those hard copy warrants are still active. Is that a policy that other law enforcement agencies have implemented that you've seen in any other cases or, you know, court cases or in your experience? Not in any other court cases, Your Honors. In the counties that I practice in primarily in rural South Dakota, Mr. Cullinan and I were joking before that the officers know most everyone that they're arresting most of the time, but I do believe that in larger counties within South Dakota, there's a more sophisticated system. There's something set up to safeguard what happened here. Is that in the record? In other words, there's something in the record for the district court to have how a law enforcement agency should be conducting their business when it comes to warrants? No, Your Honor. No. So that's not in the record? No, it's not. There was testimony from one of the deputies that dealt with the warrant system that our Sheriff's Department was aware of its situations in the past where a warrant was recalled, but the hard copy of that document was not taken out of the tray. They both also testified that they couldn't recall that an arrest had ever taken place before Elmer Zahn on the basis of a warrant that had been recalled. But when I read the Court's decision in Haring, and it talks about systemic error, which I think is more to the point that you were getting at, Judge Kelly, I would, I think, have to concede that I don't have a series of evidence to demonstrate that this case falls within that part of the holding in Haring, but it does fall within the second part of that holding, which is the reckless disregard for constitutional rights, and I think that's the prong of the holding where this case falls into, and I think that's what the evidence showed, is that despite being aware of a potential issue, nobody from the Brown County Sheriff's Department thought it was critical enough or important enough to preserve the integrity of the constitutional rights of its citizens. It just thought, well, this is the way we're going to go, and they created a system that, in my mind, really wasn't a system at all, and when we're talking about the exclusionary rule and the idea that it's designed to talk about the culpability of the police and what the potential benefits of the exclusion are, in this case, we have a system that's reckless, that doesn't take into account the rights of its citizens, and the court has an opportunity to say that that's not sufficient. It's not a difficult process to implement, especially in a county like Brown County, where I believe we have 26,000 residents. As I mentioned earlier, most of the individuals running through that warrant system, unfortunately, are the same individuals. It would not be difficult for a person to go through that warrant tray periodically to make sure that this is happening. And if there had been evidence of that, then I don't think I would even have an opportunity to file a meritorious motion to suppress or end up here, but we don't have that. We have nothing in place to protect these people, which is reckless and falls squarely within the holding of an independent basis for Elmer's arrest because he resisted arrest. But Deputy Kolb, even though the magistrate, I think, recognized that Deputy Kolb didn't really know, and I'm not picking on Deputy Kolb, but he didn't really know what the elements of resisting arrest were because he kept saying, well, if somebody doesn't comply with my order, that's resisting arrest. That's not the standard for resisting arrest under South Dakota. The statute spells out very clearly that there has to be an act, a physical force, or threatening to use physical force. And so the magistrate is trying to lead him to this justification for the arrest. But is there evidence of physical force here? Not against the officer. The officer testified that at one point Zahn attempted to walk away from him. I think the closest thing you have to it is when he talks about Zahn perhaps trying to push past him. But he didn't describe it as an act against himself. He talked about him not being willing to get into the handcuffs. But really, the most telling statement to me was when he takes Elmer Zahn to the ground and he says to him, if you would have just listened, you wouldn't be on the ground right now. And not listening is not a basis for the resisting arrest. Counselor, you've got the two arrests, right? I know. Let's talk about the second one. But what is your position on the resolution of the first one? I understand that if we conclude and agree with you that that was unlawful, then we get to the next one. What if we determine that the first one is either proper under herring or an arrest for resisting arrest? Do you get to the second one? I don't think in all candor that I could say that I could get to the second one, Your Honor, because at that point, then you have a valid arrest and you have a valid bench warrant as a result of that arrest. And then the arrest that takes place in 2020, I don't think I would have an opportunity to really challenge that. And if there are no other questions, then I would reserve the rest of my time for rebuttal, Your Honors. You may. Thank you. May it please the Court, my friend Tom Cogley. I'm Kevin Colliner with the U.S. Attorney's Office representing the government in this case. Your Honors, we ask that the district court's denial of the suppression motion be affirmed for a variety of reasons. This is one of those cases where there's separate alternative paths that all lead to the same conclusion, the same destination. Opposing counsel talked about the herring case. You know, it's rare that we have a Supreme Court case so directly on our facts. Chief Justice Roberts began the herring majority opinion by asking this question. I wrote it down because it struck me of how close a question it is to this case. What if an officer reasonably believes there is an outstanding arrest warrant, but that belief turns out to be wrong because of a negligent bookkeeping error by another police employee? That was how the Supreme Court framed the question in herring. That's exactly what we have here in this case. There's been a lot of argument about, and there was testimony about, the system in place in Brown County. And I know in the briefing it's sort of talked about as there's no system at all. Well, I mean, there was a system. And there was lengthy testimony just about that system. The warrants come down from the Clerk of Courts or the State AG's office. They have certain boxes there at those offices designated for the Sheriff's office. They're filed in a warrant system once they are received in the Sheriff's office. They're entered into a computer system into NCIC. They're kept out on a counter space for the newer warrants. They're put away in a cabinet for the older warrants. Their Deputy Kolb talked about how, as a guy kind of in charge of doing the warrants, he goes through them periodically. And then you had Kathy Neitzel talking about her 37 years at the Brown County Sheriff's office doing warrants for the past three decades. Really describes the very same system. So there is a system in place. And frankly, it's a system that apparently has worked for decades because neither of them could recall a single instance in which anyone had been arrested on an invalid warrant. Now, they were both careful witnesses, and they admitted, well, you know, essentially, yeah, there may have been, there probably were situations in the past where a warrant should have been recalled. I can't remember any specifics, but that probably has happened. What I want to key in on that is how do you find out if a warrant should have been recalled, but it hasn't been? Either you find out because someone like Mr. Zahn, in this one instance, was arrested on the warrant, or you found out, I imagine, I think the inference is, because somewhere in the system, they caught it, right? That's how Kathy Neitzel would know about it. That's how Deputy Kolb would know about it, would have this, you know, inkling in their mind that, yeah, I do recall sometimes that we essentially caught some recalled warrants. So there's no testimony about how that was caught, what process, whether it was happenstance or an actual review process of the warrants in the box? That's right, Your Honor. I'm saying that's an inference that can be drawn. Those questions, those follow-up questions weren't asked. But as I sit and think through it, you know, how else do you catch a warrant that's in the box that shouldn't be, unless someone in the office caught it somehow through their system? You know, in hearing this, there's this question of, well, how often do mistakes have to occur before you've got widespread, recurrent, systemic problems such that a reasonable, objectively reasonable officer would be reckless to rely on that warranted system? In hearing, they had zero. In Arizona v. Evans, there was testimony that happens about every three years, right? That's the case dealing with essentially the same situation, but that time it was a court employee who had made a mistake. The Supreme Court took up hearing to decide if that rationale applies also to police employees. In Arizona v. Evans, you know, you had testimony that happened, I think it was about once every three years. So here we're probably less than Arizona v. Evans. We may be more than hearing because we have some testimony that they had caught a few in the past, not leading to an arrest. But we're well within the Supreme Court's sort of guide rails in on the face of it reckless because of widespread mistakes. One important point is that the conviction that we're up here on is a conviction regarding the second arrest, right? Not the first arrest. And so, Judge Kelly, to your point, I don't think you even really kind of get to that arrest on the first arrest. But, you know, the report and recommendation also delved into the attenuation doctrine that applied sort of independently validating the second arrest, found that there was no Fourth Amendment interest in the hotel when occupants are justifiably evicted based on this found that the witness was not credible, virtually unreviewable on appeal. The witness who was in the room who said that the officers were shuffling through the materials before the warrant came back. So there's independent paths on the second arrest, even aside from the first arrest. And your first arrest, there's a couple. Are you still supporting the independent basis of the resisting arrest? Can you help flesh that out? It's the transcripts. It's a little thin on that, but can you address some of the concerns that your opposing counsel had raised about the testimony from the officer on that? Sure. I mean, as this Court knows, and as I certainly know, transcripts are always a little thin when you're cross-examining officers on texts of statutes and, you know, intricacies of laws. But in the Court even kind of re-crossed the or asked further questions of the officer to really nail down, you know, did he push past you? Was there some kind of physical contact? And I think ultimately the officer, you know, described the South Dakota resisting arrest statute. The Court wants to look at the body cam video of that arrest for itself. I think it was entered in as Exhibit 1 at the suppression hearing. I've watched it. I'll just say it really starts out right in the moment when he makes contact with Zahn. You know, often you have a few minutes leading up to the encounter. This goes right into it. But what you see is they wrestled him down to the ground. There was a physical tussle that led to the... But the officer wrestling him to the ground doesn't answer the question as to whether he was threatening or imposing physical force on the officer. I understand and I agree entirely, Your Honor. And I didn't mean to infer that an officer can tackle anyone and then charge that they resisted when they say, why are you tackling me? I don't think that's the scenario here. And the magistrate court looked at that question in depth and found that specifically that he met the elements of resisting arrest under those facts. So I think there is a record that the Court can review on it. You don't have to look at the physical force that led to resisting. So, you know, this really does present one of those cases that fits a fact scenario nearly exactly like an issue that the Supreme Court has decided. And the Supreme Court decided, at least the majority of the Court at that time, decided in the government's favor. And that's the central reason why we believe that this denial of the suppression motion should be affirmed. And again, there's also additional reasons, if that's not enough, that are laid out in the briefing and in some of the arguments made today. So unless there's further questions, I'll take my seat. Thank you, Your Honors. Thank you. May it please the Court. Anecdotally, I want to address the question of how they get caught. They get caught most of the time because they contact somebody like me. Six months ago, I had a client call me and say, hey, I'm here for my 24-7 PBT, and they're telling me I have a warrant, and it's from an I look it up, and I contact the judge, and it gets handled. So it's not simply that law enforcement is doing anything. Most of the time, in my experience, when those get caught, it's because somebody contacts their lawyer, and then the lawyer looks into it. With regard to the hearing decision, I don't have any problem with this Court relying on the hearing decision. I just believe that the rule that was in the hearing case was handling its warrant system, but we presented to the magistrate at our evidentiary hearing how the Brown County Sheriff's Department is doing it, and it recklessly disregards the citizen's rights. Briefly touching on the 2020 arrest, the issue that I have with the 2020 arrest is that in Strife and in Lowry and in the government's briefing, there's this case, we have an unconstitutional arrest in 2019. Then we have a bench warrant for failure to comply with bond violations from the arrest in 2019, which was being challenged in state court by Mr. Zahn's state court attorney. It's never been resolved, and the case was dismissed when he was convicted in federal court. But we have these circumstances, and then we have an arrest that's based on the bond violation from the unconstitutional arrest. We don't have that predicate of a constitutionally valid warrant that predates the unconstitutional conduct by law enforcement, and that's why I believe that the 2020 arrest is also illegal. I see that my time is up. So just a one follow-up question. You were talking about the state court proceedings. So what you're saying, a state court has never answered the question that we kind of have to get at here as to the validity of the first arrest? That's correct, Your Honor. The Brown County State's Attorney's Office and presumably the state court judge was more than happy to let the government and Your Honors address the question. Thank you. Thank you.